Case No. 25-60202

# In the United States Court of Appeals
# For the Fifth Circuit

CITIZENS FOR CLEAN AIR & CLEAN WATER IN BRAZORIA COUNTY,

*Petitioner,*

v.

UNITED STATES DEPARTMENT OF TRANSPORTATION; SEAN DUFFY, SECRETARY, U.S. DEPARTMENT OF TRANSPORTATION, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE U.S DEPARTMENT OF TRANSPORTATION; UNITED STATES MARITIME ADMINISTRATION, AN AGENCY OF THE U.S DEPARTMENT OF TRANSPORTATION; ADMINISTRATOR, IN HIS OFFICIAL CAPACITY AS ADMINISTRATOR OF THE U.S MARITIME ADMINISTRATION; UNITED STATES COAST GUARD, AN AGENCY OF THE U.S. DEPARTMENT OF HOMELAND SECURITY; KEVIN E. LUNDAY, IN HIS OFFICIAL CAPACITY AS COMMANDANT OF THE U.S. COAST GUARD,

*Respondents,*

TEXAS GULFLINK, LLC,

*Intervenor*

On Petition for Review from Maritime Administration

## INTERVENOR'S MOTION FOR STAY OF MANDATE PENDING APPLICATION FOR WRIT OF CERTIORARI

W. Scott Hastings
Texas Bar No. 24002241
scott.hastings@troutman.com
**TROUTMAN PEPPER LOCKE LLP**
2200 Ross Avenue, Ste. 2800
Dallas, Texas 75201
Tel.: (214) 740-8000
Fax: (214) 740-8800

Tod J. Everage (#32445)
tod.everage@keanmiller.com
Amanda Howard Lowe (#32507)
amanda.lowe@keanmiller.com
Jeffrey Gelpi (#37130)
jeff.gelpi@keanmiller.com)
**KEAN MILLER LLP**
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Tel: 504.585.3050
**Attorneys for Texas GulfLink, LLC**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal.

1. **Petitioner:**
   a. Citizens for Clean Air & Water in Brazoria County d/b/a Better Brazoria ("Brazoria")
   b. Lone Start Legal Aid – Counsel for Petitioner
2. **Respondents:**
   a. U.S. Department of Transportation
   b. U.S. Secretary of Transportation, Sean Duffy
   c. U.S. Maritime Administration ("MARAD")
   d. MARAD Administrator
   e. U.S. Coast Guard
   f. Commandant of the U.S. Coast Guard, Kevin E. Lunday
   g. U.S. Department of Justice – Counsel for Respondents
3. **Intervenor:**
   a. Texas GulfLink, LLC ("TGL")
   b. Kean Miller LLP – Counsel for Intervenor
   c. Troutman Pepper Locke LLP – Counsel for Intervenor
   d. Texas GulfLink Holdings, LLC – Interested Party in Intervenor
   e. Sentinel Midstream LLC – Interested Party in Intervenor
   f. Cresta Energy Fund I Carry, LP – Interested Party in Intervenor
   g. Cresta Energy Fund I, LP – Interested Party in Intervenor

*/s/ W. Scott Hastings*
*Counsel for Intervenor*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......... ii

TABLE OF CONTENTS .......... iii

TABLE OF AUTHORITIES .......... iv

INTRODUCTION .......... 1

BACKGROUND .......... 3

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. The Petition Will Present a Substantial Question. .......... 5

II. Good Cause Exists for a Stay. .......... 8

A. Texas GulfLink Will be Irreparably Harmed if the Mandate Issues Prior to Exhausting its Appeal Rights. .......... 8

B. The Balance of Equities Favors a Stay. .......... 11

CONCLUSION .......... 13

CERTIFICATE OF CONFERENCE .......... 15

CERTIFICATE OF SERVICE .......... 15

CERTIFICATE OF COMPLIANCE .......... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C. Cir. 1993)....10

*Baldwin v. Maggio*,
715 F.2d 152 (5th Cir. 1983)....5

*Cboe Futures Exch., LLC v. SEC*,
77 F.4th 971 (D.C. Cir. 2023)....12

*Cement Kiln Recycling Coal. v. EPA*,
255 F.3d 855 (D.C. Cir. 2001)....12

*Chamber of Commerce v. SEC*,
443 F.3d 890 (D.C. Cir. 2006)....12

*Curry v. Baker*,
479 U.S. 1301 (1986)....6, 9

*Hollingsworth v. Perry*,
558 U.S. 183 (2010)....5, 11

*Indep. U.S. Tanker Owners Comm'n v. Dole*,
809 F.2d 847 (D.C. Cir. 1987)....12

*Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960 (D.C. Cir. 1990)....10

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024). Op. 11–12, 17–18....7

*Marin Audubon Soc'y v. FAA*,
129 F.4th 869 (D.C. Cir. 2025)....11, 12, 13

*Nat'l Republican Cong. Comm. v. Brown*,
No. 26A274, 609 U.S. ----, 2026 WL 2618462 (U.S. Sept. 4, 2026)....5

*Philip Morris USA Inc. v. Scott*,
561 U.S. 1301 (2010)....8

*Planned Parenthood of Se. Pa. v. Casey*,
510 U.S. 1309 (1994) (Souter, J., in chambers) ....................7

*S. Park Indep. Sch. Dist. v. United States*,
453 U.S. 1301 (1981) (Powell, J., in chambers)....................6

*U.S. Tel. Ass'n v. FCC,*
188 F.3d 521 (D.C. Cir. 1999) ....................12

**Statutes**

28 U.S.C. § 2101(f)....................1, 5, 9, 11

33 U.S.C. § 1501 ....................1

33 U.S.C. § 1501(a)(5)....................6

33 U.S.C. § 1502(9)(B)....................3

33 U.S.C. § 1503(a) ....................8

33 U.S.C. § 1504(d) ....................1, 3, 7

33 U.S.C. § 1504(i) ....................4

33 U.S.C. § 1516 ....................10

33 U.S.C. § 1520(a) ....................2

**Rules and Other Authorities**

84 Fed. Reg. 30298 (June 26, 2019) ....................9

5th Cir. R. 27.2.7....................14

Fed. R. App. P. 41(d) ....................passim

Sup. Ct. R. 10(c)....................5

Sup. Ct. R. 13.1 & 13.3....................4

# INTRODUCTION

Intervenor Texas GulfLink, LLC ("Texas GulfLink" or "TGL") respectfully moves under Federal Rule of Appellate Procedure 41(d) and 28 U.S.C. § 2101(f) for an order staying issuance of the mandate for 90 days, allowing sufficient time for Texas GulfLink to file a Petition for a Writ of Certiorari (a "Petition") to the Supreme Court of the United States and, if the Petition is timely filed, until the Supreme Court's final disposition. The current mandate issuance date is October 22, 2026.

Texas GulfLink anticipates filing a Petition addressing an issue of national importance regarding the scope of an "application area" under Section 1504 of the Deepwater Port Act ("DWPA"), such that the proposed port within that application area "would eliminate … the need for any other deepwater port." The Executive[1] and Congress have both identified the creation of deepwater ports as critical to implementing United States energy policy. 33 U.S.C. § 1501 (declaration of purpose). This Court's interpretation of Section 1504, however, significantly limits the discretion granted by Congress to the United States Department of Transportation's Maritime Administration ("MARAD") to determine where deepwater ports are located and how many should be allowed. *See* 33 U.S.C. § 1504(d)(2). Not only does that decision have ramifications for economics and

[1] https://www.transportation.gov/briefing-room/trumps-transportation-secretary-sean-p-duffy-unleashes-american-energy-awards-texas-0.

energy policy, it also impairs the Secretary's discretion to regulate construction of pipelines, including for safety reasons. 33 U.S.C. § 1520(a).

Although there is currently no circuit split on this issue, the issue presented is one that is unlikely to generate a split among the appellate courts for two critical reasons. First, the vast majority of deepwater port export applications have been for projects in the Gulf of Mexico given the concentration of oil production and refining in Texas and Louisiana. Although there are other proposed deepwater port projects in the Gulf that are currently under review, there are no pending applications outside this Circuit. Thus, the decision here will impact the ability for all of those pending projects to proceed. Second, given that this Court's decision is binding on MARAD—the agency responsible for approving deepwater port applications—this Court's decision prohibiting overlapping pipelines for proposed crude-oil deepwater ports (even though overlapping pipelines are common offshore) will effectively constrain the entire industry's ability to develop such ports.

Irreparable harm will occur if the Court's decision vacating Texas GulfLink's record of decision ("ROD") is allowed to take effect before Texas GulfLink has exhausted its appellate rights. It took six years for Texas GulfLink to obtain its ROD after a thorough review by numerous federal and state agencies. Enormous capital commitments have been made based on the ROD. Issuance of the Court's mandate will certainly result in a serious, irreversible disruption to the Texas GulfLink

project. Texas GulfLink respectfully requests that the mandate be stayed to avoid this disruption while Texas GulfLink continues to exhaust its appellate remedies.

## BACKGROUND

Texas GulfLink filed its DWPA application for a license on May 30, 2019 seeking to own and operate a national energy policy-supporting crude oil export terminal off the coast of Texas; the first of its kind. After almost six years of environmental review, state and federal agency coordination, public involvement, project changes in response to public and agency comment, and extensive capital investment, MARAD issued Texas GulfLink's ROD on February 14, 2025. MARAD subsequently issued Texas GulfLink's deepwater port license on January 29, 2026. The ROD was challenged by Petitioners on April 17, 2025 based on a 2019 determination by MARAD concerning Texas GulfLink's "application area" under 33 U.S.C. § 1504(d). Petitioners argued that MARAD erred at the onset of its application review process by failing to include Texas GulfLink's offshore pipeline within its application area, a decision that Texas GulfLink relied upon throughout the application review process.

On August 12, 2026, this Court granted Petitioner's petition for review. The Court held that the DWPA requires an application area to encompass the entirety of a proposed deepwater port site, including any proposed pipelines, because § 1502(9)(B) defines "deepwater port" to include pipelines seaward of the high-

water mark. Op. 2, 19–20. Because Texas GulfLink's application area, so drawn, would intersect the pipeline of the previously-licensed (but not-yet-built) SPOT project, the Court concluded the ROD violated § 1504(i), held that remand without vacatur was inappropriate, vacated the ROD, and remanded. Op. 20–21. Notably, there are two other pending deepwater ports under review with application areas similar to Texas GulfLink's that will likely require redesignation as a result of the panel's decision, potentially resulting in consequential impacts to those projects as well.

Texas GulfLink timely petitioned for panel rehearing and rehearing *en banc*. On October 15, 2026, the Court denied both petitions. Texas GulfLink intends to file a Petition to the Supreme Court on or before January 13, 2027, the ninetieth day after the denial of rehearing. Sup. Ct. R. 13.1, 13.3. Herein, Texas GulfLink respectfully requests this Court stay the issuance of its mandate for 90 days while Texas GulfLink prepares its Petition.

## LEGAL STANDARD

A party may move to stay the mandate pending a petition for certiorari, and "must show that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). A stay may not exceed 90 days unless the period is extended for good cause or the party notifies the circuit clerk that the petition has been filed, in which case the stay continues until the Supreme

Court's final disposition. Fed. R. App. P. 41(d)(2). The Court's authority also derives from 28 U.S.C. § 2101(f), which permits a judge of the court rendering the judgment to stay its execution and enforcement "for a reasonable time to enable the party aggrieved to obtain a writ of certiorari." In applying these provisions, this Court asks whether there is "a reasonable probability that four members of the [Supreme] Court would consider the underlying issue sufficiently meritorious for the grant of certiorari," "a significant possibility of reversal of the lower court's decision," and "a likelihood that irreparable harm will result if that decision is not stayed." *Baldwin v. Maggio*, 715 F.2d 152, 153 (5th Cir. 1983); *accord Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (*per curiam*); *Nat'l Republican Cong. Comm. v. Brown*, No. 26A274, 609 U.S. ----, 2026 WL 2618462 (U.S. Sept. 4, 2026). "In close cases," the court also balances the equities and weighs the relative harms to the applicant and the respondent. *Hollingsworth*, 558 U.S. at 190.

## ARGUMENT

### I. The Petition Will Present a Substantial Question.

There is a reasonable probability that four Justices will grant certiorari. The Petition presents an important question of federal statutory interpretation that should be settled by the Supreme Court. Sup. Ct. R. 10(c). The Court's holding is, to Texas GulfLink's knowledge, the first appellate construction of the DWPA's application-area provisions, and it governs every crude-oil deepwater port licensing proceeding

in the Gulf off Texas and Louisiana where virtually all such projects will be located. Future appellants to this Court and applicants to MARAD will be bound by the binding interpretation of the DWPA set in this case. Because this Court is effectively the only court of appeals in which these questions will arise, a conventional circuit split is unlikely ever to develop, placing even greater importance on the soundness of the Court's decision. Thus, this Court's decision is not just the first interpreting the scope of an "application area," it is likely to be the last without further review.

There are no other circumstances that would compel denial of review. This is not a case presenting issues the Supreme Court has already declined to review, *cf. S. Park Indep. Sch. Dist. v. United States*, 453 U.S. 1301 (1981) (Powell, J., in chambers), nor one confined to unique, non-recurring facts, *cf. Curry v. Baker*, 479 U.S. 1301 (1986) (Powell, J., in chambers). The Court's rule will control every future application-area designation in a Gulf crossed by a dense web of pipelines, including several others that are currently pending. Op. 18–19.

The question also matters to the Nation's energy-export infrastructure, which Congress expressly sought to promote. 33 U.S.C. § 1501(a)(5). After nearly six years of regulatory scrutiny and review, MARAD finally issued Texas GulfLink's ROD and then license, advancing this critical project towards construction. The Court's interpretation of the DWPA, in a way that is counter to MARAD's own reading over the course of 50 years, undermines those efforts. The Court recognizes that the

DWPA was problematic in its construction and notified the U.S. Congress of that fact. Yet, the Court chose to invalidate MARAD's discretionary authority and issue an opinion that not only impacts Texas GulfLink, but the other pending deepwater ports as well. The impact of the opinion on such important energy infrastructure cannot be overstated.

There is a fair prospect that a majority of the Supreme Court will reverse. Texas GulfLink recognizes that it must overcome the presumption of correctness that attaches to the Court's decision. *Planned Parenthood of Se. Pa. v. Casey*, 510 U.S. 1309 (1994) (Souter, J., in chambers). It can do so. Section 1504(d)(2) defines "application area" as "any reasonable geographical area within which a deepwater port may be constructed and operated," subject only to a maximum. The federal Respondents and Texas GulfLink advanced a reasonable textual reading under which "deepwater port site" in § 1504(d)(1) refers to the port's location, distinct from the defined term "deepwater port," and under which MARAD retains discretion within the statutory maximum. Op. 12, 15–16. The Court rejected that reading under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Op. 11–12, 17–18. How courts should apply *Loper Bright*'s "best reading" inquiry to statutes that expressly delegate discretion to an agency, here, to designate "any reasonable geographical area," is a question of broad significance on which the Supreme

Court's guidance is actively developing. The United States itself defended MARAD's reading, which further supports a fair prospect of reversal.

The Court's remedy compounds the significance of the question. The Court vacated the ROD rather than remanding without vacatur, concluding that the error was a serious procedural deficiency that MARAD could not correct on remand. Op. 20–21. That remedial holding turns entirely on the statutory question, so a reversal on the merits would restore the ROD and the license if the mandate is issued. This highlights the criticality of the request for this stay.

## II. <u>Good Cause Exists for a Stay.</u>

Texas GulfLink faces irreparable harm. Texas GulfLink's license expressly incorporates the ROD as a compliance standard. Issuance of the mandate would give effect to vacatur of the ROD, in turn exposing the license to suspension or revocation by MARAD, and preventing construction of offshore components under 33 U.S.C. § 1503(a).

### A. <u>Texas GulfLink Will be Irreparably Harmed if the Mandate Issues Prior to Exhausting its Appeal Rights.</u>

Harm is irreparable where it cannot be undone if the applicant ultimately prevails; even economic loss qualifies when it cannot be recouped. *See Philip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010) (Scalia, J., in chambers) ("If expenditures cannot be recouped, the resulting loss may be irreparable."). In this case, if a stay is not granted and the mandate is allowed to issue, Texas GulfLink

would be forced to proceed without a valid ROD and, potentially, license, while pursuing its Petition in the Supreme Court. At a minimum, the cloud on Texas GulfLink's regulatory posture will harm Texas GulfLink in the marketplace—a harm that could be avoided if the mandate is stayed pending the exhaustion of Texas GulfLink's appellate efforts. Nor does Texas GulfLink rely on harm alone; it couples these injuries with the substantial question shown above. *Cf. Curry*, 479 U.S. at 1301.

Irreparable harm would also result in unnecessarily vacating an approval—the ROD—that has literally taken years to prepare. Texas GulfLink's path to the ROD spanned roughly seven years; from MARAD's 2019 publication of the application and application area, 84 Fed. Reg. 30298 (June 26, 2019), through years of environmental review, agency consultation, and public comment, to the ROD on February 14, 2025, and the license on January 29, 2026. If the mandate is issued and the ROD is vacated before Texas GulfLink has exhausted its right to seek Supreme Court review, it would effectively erase that seven-year, capital-intensive record on the strength of a statutory interpretation the United States itself has rejected, and would do so at the very moment a further appeal remains available. Congress and the Federal Rules both contemplate that a losing party may preserve the status quo while it pursues certiorari. 28 U.S.C. § 2101(f); Fed. R. App. P. 41(d).

The relief requested by Texas GulfLink is also self-limiting: the stay continues beyond its initial period only if Texas GulfLink notifies the Clerk that the Petition has been filed, and the mandate must issue immediately upon an order denying the Petition. Fed. R. App. P. 41(d)(2)(B), (d)(4). Texas GulfLink should be permitted to exhaust its appellate rights before the ROD on which seven years of work and substantial investment depend is vacated.

Issuing the mandate now would also invite precisely the kind of wasteful and prejudicial back-and-forth that a stay is designed to prevent. If the ROD is vacated and the Supreme Court later reverses, the vacatur will already have taken effect, and MARAD may be required to reconsider and re-issue a new ROD, and potentially take further action on the license, simply to restore what the Supreme Court held was lawful all along. Any new ROD would be a new final agency action, likely subject to fresh notice, comment, and administrative proceedings and to new petitions for review. 33 U.S.C. § 1516. Texas GulfLink would thus bear the cost, risk, and delay of a second approval process, unnecessarily.

Courts reviewing agency action have long recognized that vacatur can carry practical costs of this kind. In deciding whether to vacate deficient agency action at all, the D.C. Circuit weighs "the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993) (quoting *Int'l Union, United Mine Workers of*

*Am. v. Fed. Mine Safety & Health Admin.*, 920 F.2d 960, 967 (D.C. Cir. 1990)). And that D.C. Circuit has explained that its practice of staying vacatur judgments "somewhat resembles" those remand-without-vacatur decisions, because both "recognize that vacating agency action can occasionally raise practical difficulties." *Marin Audubon Soc'y v. FAA*, 129 F.4th 869, 872 (D.C. Cir. 2025). Although the Court here has already chosen vacatur, the same practical concern applies with special force where, as here, the interim change may itself be undone by the Supreme Court. A brief stay avoids that interim change, and the needless re-litigation it would trigger, while the Supreme Court decides whether to take the case.

**B. <u>The Balance of Equities Favors a Stay.</u>**

A stay merely preserves the status quo that has existed since the Court's opinion issued. Petitioner's asserted injuries flow from construction of the deepwater port, Op. 10–11, and no deepwater port construction can lawfully occur without a valid license. Given the uncertainty of its ROD and license, Texas GulfLink will not commence construction of the deepwater port under the current posture, even if the mandate is stayed. Where, as here, the Petitioner cannot identify concrete harm from a stay while the applicant faces a concrete threat of harm, the equities favor the applicant. *Hollingsworth*, 558 U.S. at 190. Because a stay imposes no monetary risk on Petitioner, no bond or other security should be required. See Fed. R. App. P. 41(d); 28 U.S.C. § 2101(f).

Staying the mandate here is also consistent with how federal courts of appeals routinely treat vacatur of agency action. The D.C. Circuit, which reviews more agency action than any other court, "has regularly stayed vacatur judgments in cases on review of agency action" in order "to ameliorate that remedy's potentially harsh consequences." *Marin*, 129 F.4th at 871 (collecting cases). That court "regularly delay[s] issuance of [its] mandates during the pendency of a petition for certiorari," *id.*, and it has "consistently granted stays when vacatur will prove to be disruptive to the losing party—but without a showing of irreparable harm," *id.* (citing *Indep. U.S. Tanker Owners Comm'n v. Dole*, 809 F.2d 847, 855 (D.C. Cir. 1987); *Cement Kiln Recycling Coal. v. EPA*, 255 F.3d 855, 872 (D.C. Cir. 2001); *U.S. Tel. Ass'n v. FCC*, 188 F.3d 521, 531 (D.C. Cir. 1999)).

In deciding whether to stay vacatur, the D.C. Circuit weighs "the practical effects on petitioners, the agencies, and third parties," including whether regulated parties have already relied on the agency action, so that "immediate vacation … risk[s] substantial disruption." *Id.* at 871–72 (quoting *Chamber of Commerce v. SEC*, 443 F.3d 890, 909 (D.C. Cir. 2006) (withholding mandate for ninety days)); *see also Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971, 982 (D.C. Cir. 2023) (building in a three-month grace period before vacatur took effect). And it has stayed the mandate for as long as twelve months where immediate vacatur "could entail disruptive consequences that tilt both the equities and public interest factors in favor of a stay."

*Marin* 129 F.4th at 872–73. Texas GulfLink has relied on the ROD in obtaining its license and planning that depends on it, and immediate vacatur would disrupt that reliance before Texas GulfLink's appeal rights are exhausted; precisely the "harsh consequence[]" that stays of vacatur are designed to avoid. *Id.* at 871.

The public interest and judicial economy favor a stay. Issuing the mandate now would trigger remand proceedings before MARAD that may be rendered unnecessary by the Supreme Court's disposition. In addition, intervening developments may bear directly on the continuing vitality of the controversy. In a rare occurrence, the Fifth Circuit Clerk of Court sent a letter directed to both the House of Representatives and the U.S. Senate advising them of its decision recognizing that it "may point out possible technical problems in statutes." Texas GulfLink is aware that certain members of Congress are currently considering efforts to effectively amend the DWPA in response to these concerns. The Court retains jurisdiction to address the impact of these amendments only while the mandate remains unissued, and a stay preserves the parties' and the Court's ability to address them in an efficient manner.

## **CONCLUSION**

Texas GulfLink respectfully requests that the Court stay issuance of the mandate for up to 90 days pending the filing of a Petition for a Writ of Certiorari

and, upon notice that the Petition has been filed, until the Supreme Court's final disposition of the petition. Fed. R. App. P. 41(d)(2); 5th Cir. R. 27.2.7.

Dated: October 21, 2026

*/s/ W. Scott Hastings*
W. Scott Hastings
Texas Bar No. 24002241
scott.hastings@troutman.com
**TROUTMAN PEPPER LOCKE LLP**
2200 Ross Avenue, Ste. 2800
Dallas, Texas 75201
Tel.: (214) 740-8000
Fax: (214) 740-8800

**KEAN MILLER LLP**
TOD J. EVERAGE (#32445)
AMANDA HOWARD LOWE (#32507)
JEFFREY GELPI (#37130)
909 Poydras Street, Suite 3600
New Orleans, LA 70112
Tel: 504.585.3050
tod.everage@keanmiller.com
amanda.lowe@keanmiller.com
jeff.gelpi@keanmiller.com

ATTORNEYS FOR TEXAS GULFLINK, LLC

## CERTIFICATE OF CONFERENCE

Pursuant to Fifth Circuit Rule 27.4, counsel for Texas GulfLink sent an email to counsel for all parties on October 19, 2026. Counsel for Petitioners responded and advised that Petitioner opposes this motion. Counsel for federal Respondents stated that they take no position on the motion.

*/s/ Tod J. Everage*
Counsel for Texas GulfLink, LLC

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this the 21st day of October, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to those who are non-CM/ECF participants.

*/s/ W. Scott Hastings*
Counsel for Texas GulfLink, LLC

# CERTIFICATE OF COMPLIANCE

1. This Motion complies with the type-volume limitation of FED. R. APP. P. 40(d)(3)(A) because the Motion contains 3,114 words, excluding the parts of this Petition exempted by FED. R. APP. P. 32(f).

2. The Motion complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this Motion has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman, 14 point.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in FED. R. APP. P. 32(a)(7), may result in the Court's striking the Petition and imposing sanctions against the person signing the Petition.

This 21st day of October, 2026.

*/s/ W. Scott Hastings*
Counsel for Texas GulfLink, LLC